**FOCHT, Appellant, v JUSTIS, Appellee.**

Ohio Appeals, First District, Hamilton County.

No. 6851.   Decided November 17th, 1947.

Peck, Shaffer & Williams and John W. Peck, all of Cincinnati, for Appellant.

Rendigs & Fry, Cincinnati, for appellee.

## OPINION

By ROSS, J.

This is an appeal upon questions of law from a judgment of the Common Pleas Court of Hamilton County, entered upon a verdict instructed in favor of the defendant at the close of all the evidence submitted in the case.

The plaintiff instituted the action to recover damages for injuries received by her when struck by an automobile operated by the defendant.

The petition contains the usual allegations of negligence on the part of the defendant. The answer denies negligence on the part of the defendant and, in the alternative, alleges contributory negligence on the part of the plaintiff.

The action of the trial court can be justified only if giving all the evidence a construction most favorable to the plaintiff (Wilkeson, Admr. v Erskine & Son, Inc., 145 Oh St 218) it appears (1) that the defendant was not guilty of negligence (2) or if guilty of negligence, such negligence was not the proximate cause of plaintiff's injuries, (3) or that plaintiff was guilty of negligence which contributed to her injury (4) or that an inference of negligence arose from the plaintiff's evidence which was not rebutted by other evidence in the case.

Any or all of these conclusions must be sustained by evidence, upon consideration of which reasonable minds could not differ as to the inferences to be drawn therefrom. **Hamden Lodge v Ohio Fuel Gas Co., 127 Oh St 469,** and, see: **Wilkeson, Admr. v Erskine & Son, Inc., 145 Oh St 218, 229, supra.**

Obviously these rules exclude from the consideration of this Court much of the evidence introduced at the trial which is antagonistic to the claims of the plaintiff.

A considerable portion of the argument and briefs is occupied with consideration of the duty of the plaintiff to negative a presumption of contributory negligence arising from her own evidence.

Where the motion for an instructed verdict in favor of the defendant is made at the conclusion of the plaintiff's evidence on the ground of unrebutted inference of contributory negligence, of course, the rebuttal must appear in the plaintiff's evidence. Where such motion is overruled and the defendant goes forward with his evidence, any error arising by reason of such ruling of the trial court is waived. When such motion is made at the conclusion of the defendant's evidence, the plaintiff is entitled to the benefit of all the evidence to furnish a rebuttal.

In **Buell, Admx. v New York Central Rd. Co., 114 Oh St 40,** the applicable rule is clearly stated:

"Where, in an action for negligence, a motion is made for directed verdict in defendant's favor at the close of plaintiff's evidence on the ground that plaintiff's evidence raises a presumption of contributory negligence, the issue raised by such motion requires that plaintiff's evidence be given the most favorable interpretation, and, if such evidence under such interpretation is susceptible of no other reasonable inference than that of negligence on his part directly contributing to the injury, and defendant's conduct is not shown to be wilful or malicious, **and plaintiff is not aided by any other evidence in the case,** it becomes the duty of the court to direct a verdict.

"When the defendant makes such motion, and the same is overruled, and proper exceptions allowed, and such motion is renewed at the close of all the evidence, and again overruled with proper exceptions, and the question is argued on motion for new trial and upon error in the Court of Appeals, it becomes the duty of this Court to examine the record to determine whether a presumption of contributory negligence arises from plaintiff's testimony, and whether such presumption is met by **any other evidence in the case,** and, if in the opinion of this court such presumption prevails, it is the duty of this court to render final judgment." (Emphasis added.)

And, on page 49 of the opinion it is stated:

"Neither does the testimony of any witness introduced by the defendant aid the plaintiff or help rebut the presumption of decedent's negligence."

Thus it is indicated that the plaintiff is entitled to the benefit of any evidence introduced by the defendant to rebut any presumption of negligence that may arise from the plaintiff's own evidence.

It is true that it is stated later in the opinion at page 50 that:

"Contributory negligence is an affirmative defense, and the testimony of the defendant in support of such issue is always a question of fact to be submitted to the jury, but a different rule applies where the plaintiff's own testimony raises the presumption, and such presumption is not rebutted by any other evidence in the case or by the attendant circumstances.

"For the foregoing reasons it was the duty of the trial court to have directed a verdict for defendant at the close of plaintiff's testimony."

No sound reason appears why the general rule of waiver should be modified in cases where an inference of negligence conclusively arises from the plaintiff's evidence if the defendant sees fit to go on and in so doing performs the task of rebuttal previously resting upon the shoulders of the plaintiff.

Such was the burden resting upon the trial court at the time the motion for an instructed verdict was made at the conclusion of all the evidence in the case. It is the action of the trial court in granting this motion which may or may not constitute error, not the action of that court upon the motion made at the close of the plaintiff's case, any error in which was waived by the defendant when he proceeded to introduce evidence which then became available also to the plaintiff.

Turning then to the transcript of the evidence and bearing in mind the favorable position of the plaintiff, it appears that Observatory Avenue is a street in the City of Cincinnati, extending in a general easterly and westerly direction; that Edwards Road is a street intersecting Observatory Avenue at right angles, and extending north and south; that Observatory Avenue is forty feet wide between curbs, with a five foot sidewalk on the north side, with a space two feet, six inches between the south line of the sidewalk and the north curb; that Edwards Road is a street forty feet wide north of the north line of Observatory Avenue and thirty feet wide south of the south line of Observatory Avenue; that the sidewalk on the west side of Edwards Road is five feet wide, with a space two feet, six inches between the east edge of the sidewalk and the

west curb of Edwards Road; that the northwest and southwest corners of the intersection are cut off by curves; that a row of "buttons" indicates the western limit of the west crosswalk across Observatory Avenue. This intersection is equipped with traffic lights at the four corners, which flash, red, amber, and green.

It further appears that the plaintiff, a woman over seventy years of age, on July 1, 1946, a bright sunshiny day, at about noon, having been shopping to the north of Observatory Avenue, walked south on the west sidewalk of Edwards Road. She reached the north curb of Observatory Avenue, and as the traffic light at the southwest corner of the intersection turned amber (after the red) stepped down off the curb, from the middle of the West Edwards Road sidewalk onto the crosswalk, and attempted to proceed south across Observatory Avenue upon such crosswalk, when she was struck by the left front portion of an automobile operated by the defendant (a man sixty-five years of age) at some point in Observatory Avenue, north of the center line thereof. She was rendered unconscious, and remained so for some time. She had no recollection of anything that occurred until she regained consciousness in a hospital. She was severely injured. There is evidence that she looked to the right or west before stepping off the curb, but no evidence that she looked to the left or east.

The defendant had driven his automobile north on Edwards Road and upon reaching Observatory Avenue found the traffic light at the northeast corner of the intersection showing red against him. This was the red signal which immediately preceded the amber light upon which the plaintiff has stepped off the curb at the northwest corner of the intersection. The situation therefore at that time was that the defendant was waiting for the north and south green light to proceed, **while** the plaintiff was walking south on the amber light which preceded such green light.

Another automobile at this time was proceeding south on Edwards Road, coming toward the defendant. The light turned green for south traffic just as it reached the intersection and it was driven on through **without stopping**. The automobile of the defendant turned west from Edwards Road onto Observatory Avenue in front of the automobile driven south on Edwards Road, although the driver of this southbound vehicle did not slacken his speed of from twenty-five to thirty miles an hour. The defendant states he did not see this southbound automobile or the plaintiff until she stood five feet away holding up her hand in front of him, as if to ward off

being struck. The defendant states that as he was making his left hand turn, he only saw two vehicles on the south side of Observatory Avenue facing east. He sounded no horn nor gave any other signal of his intention to turn west on Observatory Avenue from his position on the east side of Edward's Road south of Observatory Avenue, except that one witness stated a left flasher light on the front part of defendant's automobile was operating.

The force of the collision of the defendant's automobile with the plaintiff "knocked her about eight feet in front of his machine." The plaintiff was about three or four feet out on the crosswalk when she was struck. The plaintiff was, therefore, knocked in a westerly direction from the path she was following south across Observatory Avenue. Her body rested after being struck ten feet west of the west curb of Edwards Road, and as the west curb of Edwards Road is seven feet, six inches from the west line of the Edwards Road sidewalk, it is apparent the plaintiff was well east of the west line of the crosswalk at the time she was struck, and knocked in a westerly direction eight feet.

The operator of the southbound automobile on Edwards Road stated he·was traveling at the rate of twenty-five to thirty miles an hour as he approached the intersection and "retained my speed as I hit the intersection" and that he was watching the defendant's automobile "because he turned in front of me at the intersection as I was going through," and that it crossed fifteen or twenty feet in front of him.

Turning to the questions presented to the trial court, and now to this court, raised by the motion of the defendant for an instructed verdict at the close of all the evidence:

(1) Does the evidence show that the defendant was negligent.

Sec. 6307-38 GC, provides in part:

"(a) No person shall turn a vehicle or trackless trolley from a direct course upon a highway unless and until such person shall have exercised due care to ascertain that such movement can be made with reasonable safety to other users of the highway and **then only after giving a clearly audible signal** by sounding the horn **if any pedestrian** may be affected by such movement or after giving an appropriate signal in the event any traffic may be affected by such movement. (Emphasis added.)

"(b) A signal of intention to turn right or left shall be given in sufficient time in advance of the movement indicated

to give ample warning to other users of the highway who would be affected by such movement."

The only suggestion of compliance with the statute is that a flasher light was operating on the left front portion of the defendant's automobile. Until the significance of such a signal is apprehended, not only by drivers, of vehicles, but also by pedestrians, it·cannot be said such a signal is an effective compliance with the requirements of this section of the statutes. It is asserted this section has no application to left turns at street intersections. It seems obvious, on the contrary, that the exigencies of such a situation require full compliance with the statute. The defendant's automobile was about to be driven directly across the path of vehicles and pedestrians rightly proceeding south on Edwards Road. Had it not been that the significance of the flasher signal was apprehended by the driver of the southbound automobile on Edwards Road, a collision might have there occurred. There is no evidence that if the plaintiff had seen this signal she would have understood its significance. It is claimed, however, that failure to give an appropriate signal could not have been the proximate cause of plaintiff's injuries, because she would not have seen it if it had been given because she did not look to her left. Whether or not, if an appropriate signal had been given, her attention would have been attracted is a matter of conjecture. However, it is to be remembered that the defendant was much farther to the south of plaintiff than he was to the east or her left. Be that as it may, the statute also provides for other measures of care specifically applicable to pedestrians who may be affected by the change of direction of a vehicle. These measures manifestly were not observed by the defendant and logical inference justifies the conclusion that had these measures been taken the plaintiff would not have been injured because her attention would have been arrested and she would have been duly warned of her danger in time to prevent injury.

It is a matter of such common occurrence as to be a matter of common knowledge that drivers of vehicles especially when making left-hand turns across the path of pedestrians either slow down their vehicles permitting pedestrians to cross or sound the horns upon the vehicles warning·the pedestrians of their approach. The fact that the defendant did not see the plaintiff who was most obviously present on the crosswalk is no excuse for running her down, but rather increases the inference of negligence against him.

The trial court was not justified either (1) in finding as a matter of law that there was no negligence on the part of the defendant (2) or that such negligence was not the proximate cause of the injuries to plaintiff, or (3) that the plaintiff was guilty of negligence contributing to her injuries. The trial court so held because she did not look to the left as she stepped off the curb onto the street. If the plaintiff had looked to the left what would she have seen? Nothing which caused her injury in Observatory Avenue east of the west curb of Edwards Road, because there was nothing in the whole avenue, either in the north or south half of it, which could or did cause her injury. Remember the plaintiff stepped off the curb on the amber light, as she had a right to do.

Sec. 6307-13 GC, provides:

"Whenever traffic is controlled by traffic-control signals exhibiting the words 'go,' 'caution,' or 'stop' or exhibiting different colored lights successively one at a time, or with arrows, the following colors only shall be used and said terms and lights shall indicate and apply to operators of vehicles, street cars and trackless trolleys and pedestrians as follows:

"(a) Green alone or 'go.'

"1. Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk.

"2. All other traffic facing the signal except as provided under sections 35 and 56 (GC §§6307-35 and 6307-56) may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. But such traffic shall yield the right of way to vehicles, street cars and trackless trolleys lawfully within the intersection and to pedestrians lawfully within a crosswalk at the time such signal is exhibited.

"(b) Yellow alone or 'caution' when shown following the green or 'go' signal.

"All traffic facing the signal shall stop provided that any traffic within the intersection shall be permitted to continue cautiously through the intersection.

"(c) ·Yellow alone or caution when shown following the red or stop signal.

"1. **Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk.** (Emphasis added.)

"2. All other traffic facing the signal shall stop and shall remain standing until 'green' or 'go' is shown alone.

"(d) Red alone or 'stop.'

"1. No pedestrian facing such signal shall enter the roadway.

"2. All other traffic facing the signal shall stop before entering the intersection and shall remain standing until authorized to proceed by a traffic-control device.

"(e) Traffic-control device authorizing turn with red or 'stop' signal.

"1. No pedestrian facing such signal shall enter the roadway.

"2.. All other traffic facing such signal may cautiously enter the intersection only to make the movement indicated by the traffic-control device, but shall yield the right of way to pedestrians lawfully within a crosswalk and to other traffic lawfully using the intersection.

"(f) Green arrow alone.

"All traffic facing such signal may enter the intersection only to make the movement indicated by such arrow but shall yield the right of way to pedestrians lawfully within a crosswalk and to other traffic lawfully using the intersection."

The defendant was required to remain stationary until the green signal flashed, authorizing him to proceed. The plaintiff, if she had looked directly at the defendant, would have merely seen a parked automobile which could have remained parked, have proceeded to the right and east, been driven directly north out Edwards Road or possibly have made a left hand turn west on Observatory Avenue. In any event, if she had seen it, she would have had the right to presume the driver would comply with the law and use due precaution for her safety. The amber light remains on for a few seconds before the green light, so that the plaintiff proceeding on the amber light walked several steps south on the crosswalk before the defendant had the right to move his automobile. There was, therfore, no inference of contributory negligence arising from her evidence which she was required to rebut, and there, of course, was no evidence of negligence on her part which by any logical inference can be shown to have contributed to her injuries.

A reading of all the evidence presents a clear picture of what occurred. The defendant, immediately upon the green light turning in his favor, swung his automobile across Edwards Road into Observatory Avenue. He did this so quickly that an automobile crossing the north line of a forty foot street, as that same light turned green, traveling at a rate of twenty-five to thirty miles per hour, was not required to slacken speed and the defendant passed some twenty feet in

front of it. The defendant for some strange reason had his attention focused on two cars facing east on Observatory Avenue, waiting for the green light to permit them to proceed east. The defendant did not see the southbound automobile, he did not see the plaintiff, and he most certainly did not use "due care to ascertain" that his left turn could be made with reasonable safety to the plaintiff. That he did not see her, does not justify his failure. She was there—because she was struck by his automobile.

On no basis was the trial court justified in instructing a verdict for the defendant.

The judgment of the Common Pleas Court is reversed and the cause remanded for trial according to law.

MATTHEWS, PJ, ROSS and HILDEBRANT, JJ, concur in Syllabus, Opinion and Judgment.