Hardy, Appellant, v. Crabbe, Appellee.*

---

*Motion to certify the record overruled, October 4, 1961.

(No. 6381—Decided April 4, 1961.)

*Mr. William J. Lohr*, for appellant.
*Messrs. Lane, Huggard & Alton*, for appellee.

BRYANT, J.   This is an appeal on questions of law.   Ethel M. Hardy, plaintiff-appellant, filed suit in the Common Pleas Court of Franklin County against Oliver C. Crabbe, defendant-appellee, for damages in the amount of $52,324.43, as a result of an accident on December 16, 1956, at the intersection of Cleveland and Duxberry Avenues, in Columbus, Ohio.

The accident took place at 12:30 a. m. on a cold night when the streets were wet, due either to snow or rain which had fallen. It was the claim of Mrs. Hardy that she was crossing Cleveland Avenue from the east side to the west side; that at all times she was on a crosswalk; that she looked to the north before starting; that the traffic light was green for her when she started, but changed when she was about half-way across; that she proceeded on through on the crosswalk; and that when she was about three-quarters of the way across, Crabbe, whom she claimed was under the influence of intoxicating liquor and traveling at an illegal rate of speed, struck her, knocked her down and caused serious and lasting injuries.   Crabbe admitted that he was driving a car southbound in Cleveland Avenue at the time, that an accident occurred and that Mrs. Hardy was injured, but entered a general denial of any negligence on his

part and alleged that Mrs. Hardy was negligent and that her negligence was the cause of her injuries.

The case was tried to the court and a jury, and, on motion of the defendant, the jury was directed to return a special verdict in five parts. The jury, in its special verdict, held (1) that Crabbe was "negligent in one or more of the particulars alleged in the petition"; (2) that such negligence was "a proximate cause of any injuries" suffered by Mrs. Hardy; (3) that Mrs. Hardy was negligent; (4) that Mrs. Hardy's negligence was "a proximate cause of any injuries she sustained"; and (5) that if, from the previous four answers, the court determines that the plaintiff is entitled to recover, the sum of $6,000 "will compensate her for the injuries and damages, if any, she sustained."

The court submitted four interrogatories to the jury, which the jury answered as follows: (1) The traffic light was green for Mrs. Hardy and other east-west traffic at the intersection "when the plaintiff, Ethel Hardy, stepped off the curb to cross Cleveland Avenue"; (2) Mrs. Hardy did "look to her right to see what was approaching before she started to cross Cleveland Avenue"; (3) the traffic light was green for southbound traffic "when Oliver Crabbe entered the intersection"; and (4) that after the plaintiff, Mrs. Hardy, stepped off the east curb of Cleveland Avenue she did not "look to her right to see whether vehicles were approaching her from the north."

The trial court entered judgment in favor of Crabbe, dismissed Mrs. Hardy's petition and, subsequently, overruled two motions filed on behalf of Mrs. Hardy. The first sought to vacate the judgment in favor of Crabbe and render judgment in favor of Mrs. Hardy upon the law and the evidence. The other motion, filed separately, was to vacate the judgment upon eight grounds set forth therein, and to grant a new trial.

The first assignment of error is as follows:

"The court erred in overruling plaintiff's objections to certain questions asked her on cross-examination."

This has to do with the cross-examination of Mrs. Hardy by counsel for Crabbe. Mrs. Hardy had testified on cross-examination that after she stepped off the curb she did not look to the right again. She testified on cross-examination as follows:

"Q. All right. Now, just so we will have it correctly in mind, I think you have already stated this, from the time you stepped off the curb you didn't look at the light again? A. I looked to the right.

"Q. And after that time you didn't look to the right again? A. No, sir, I was intent on getting across the street."

"* * *

"Q. Mrs. Hardy, could you have seen this automobile which you came in contact with if you had looked to your right?.

"Mr. Lohr: Object, calls for a conclusion on her part.

"The Court: The court will let her answer. You may have your exceptions. Objection will be overruled.

"Q. Do you understand my question? A. I don't quite. understand.

"Q. Just before the accident happened, say a step or two before it happened, if you had looked to your right, could you have seen this automobile coming? A. I suppose I could.

"Q. In other words, there isn't anything wrong with your eyes? A. No, sir.

"Q. And if you had looked to your right and seen it coming, I assume you would have stopped to avoid— A. Not probably in the middle of the street, and him right on me.

"Q. You mean if you had seen him coming you could have kept walking? A. I would have tried to get out of the way.

"Mr. Lohr: We will stipulate she would have tried to get out of the way.

"Mr. Alton: I think I would like to get the statement from the witness.

"The Court: You may, this is cross-examination.

"Q. Had you looked to your right and seen him coming, you would have attempted to avoid the collision? A. Avoid— absolutely.

"Q. And you did know that cars were moving towards you, didn't you? A. Yes, sir.

"Q. And you just kept looking straight ahead because you were intent in getting across? A. Yes, sir."

We feel that it was eminently clear that Mrs. Hardy, although she testified that before leaving the curb on the east side she looked at the traffic light and found it to be green for her and looked to her right, or to the north, and observed that traffic in

that direction had come to a standstill, made it quite clear that as she proceeded across the street in the marked crosswalk, she did not again look to her right. It was speculative and therefore improper to seek to get her to state an opinion as to whether she could have seen a person or vehicle when in fact she did not look, and then to proceed to the second step and ask her what she could have done had she seen such vehicle. We conclude therefore that the first assignment of error is well taken and should be sustained.

The second assignment of error is as follows:

"The court erred in refusing to give special instruction No. 12 requested by the plaintiff."

While in the brief of the plaintiff in support of the motion for a new trial, and in her brief in this court, there is quoted the text of special instruction No. 12, and defendant compares it with special instruction No. 14, which was given, our search of the record fails to disclose that any of. the special instructions which were refused appear anywhere in the record. In the bill of exceptions, where the several special instructions were being considered, there appears the following:

"The Court: All right. Now, No. 12?

"Mr. Alton: I object strenuously to No. 12. What she believed or had the right to believe is contrary to—what she may have thought she had the right to believe didn't have a thing to do with it.

"Mr. Lohr: If she did in the exercise of ordinary care?

"The Court: Well, I don't believe the court will give that one because I believe it is misleading.

"Mr. Lohr: In what way is it misleading? Maybe I can change it.

"The Court: All right.

"Mr. Lohr: I will object to the refusal."

Special Instruction No. 12, as quoted in the brief of plaintiff in this court, is as follows:

"If you find by a preponderance of the evidence that Ethel Hardy, before she started across Cleveland Avenue, believed or had the right to believe, in the exercise of ordinary care, that it was safe to cross the street, I charge you that she was not bound, as a matter of law, to look for approaching vehicles after she left the curb."

Special Instruction No. 14, which was given by the court, is as follows:

"If you find by a preponderance of the evidence that the plaintiff, Ethel Hardy, before she started across Cleveland Avenue, believed or had the right to believe, in the exercise of ordinary care, that it was safe to cross the street, then I instruct you that she had the right to start across and it was not essential that she constantly watch for approaching vehicles as she proceeded across Cleveland Avenue."

While we cannot express an opinion upon something which is outside the record, as is special instruction No. 12 in this case, we are inclined to agree with counsel for defendant that at least the substance of what is claimed to be special instruction No. 12 was given to the jury in special instruction No. 14. The second assignment of error, therefore, appears not well taken and should be overruled.

The third assignment of error is as follows:

"The court erred in refusing to charge the jury on 'assured clear distance ahead' rule."

The court, in its general charge to the jury, said as follows:

"The third claim in the petition is in failing and neglecting to stop said automobile within the assured clear distance ahead.

"The court feels he should not charge you on that particular issue because it does not feel it is involved in this case."

This refusal of the court was the subject of a specific objection by counsel for plaintiff It was the theory of the defendant that Mrs. Hardy walked into the side of Crabbe's car and hence never was in his path, with the result that the assured-clear-distance rule was not involved.

Crabbe testified that as he was coming south on Cleveland Avenue he was driving "between 25 and 30 miles an hour"; "I might have been going 35, but not over that I'm sure"; "I could have been going 35." Crabbe testified that there was nothing in the street or any place else to obstruct his vision of the road ahead; that, as he approached the intersection of Duxberry and Cleveland, he was driving "in the center lane"; that there is a marked center line on Cleveland Avenue; that, as he was approaching Duxberry, he was in the center lane which was "closest to the center of the street"; that in the same lane ahead of his car, there was another car which "was slowing

down''; and that the car ahead "was almost to the intersection there, then I just went on around him." The following questions were asked of Crabbe on cross-examination near the beginning of plaintiff's case:

"Q. Tell us what happened when you swerved around this car? What happened then? A. I looked at the light. When I looked, then I saw Mrs. Hardy, and I swerved, tried to apply my brakes and she walked into the side of my car.

"* * *

"Q. How far were you from Mrs. Hardy when you saw her for the first time? A. Oh, around 10 feet, I would say, sir.

"Q. 10 feet? A. Yes, sir.

"Q. Was there any question but that Mrs. Hardy was in the south crosswalk when you saw her? A. No, sir.

"* * *

"Q. Then the first time you saw Mrs. Hardy was when you were 10 feet away from her? A. Around there, sir, and she was right up on me.

"Q. That would put you almost through the intersection wouldn't it? A. I believe, sir.

"Q. And nothing was obstructing your vision? A. No, sir.

"Q. Did you put your foot on the brake? A. Yes, sir.

"Q. What else did you do? A. And swerved to the right."

Crabbe estimated also that when he first saw Mrs. Hardy she was "maybe close to three-fourths of the way across." He again stated that he swerved his car and put his foot on the brake.

It seems to us that if Mrs. Hardy was three-fourths of the way across the street and if Crabbe felt it was necessary to, and did, swerve his car to the right, that obviously Mrs. Hardy was in his path. The record is not clear as to the speed at which Crabbe's car was going when the impact took place. Crabbe insists that he slowed down in passing the car of Joel Robinson. However, John Taylor, a defense witness, testified as follows:

"Q. Again, I will ask you, Mr. Taylor, at the time of this collision did this car slow down? A. Not till it stopped. * * * Not until a block away? * * * Approximately—not quite a block."

Joel Robinson, driver of the automobile which was traveling south in Cleveland Avenue just ahead of Crabbe in the lane

closest to the center of the street, testified that he was traveling "approximately 32 miles an hour"; that Crabbe passed him either "about 150 feet from the traffic light," which was "when he started to pass me"; and that he first observed Mrs. Hardy "when the Pontiac was passing me, it was, oh, I would say— well, within 50 feet of the center of the intersection." Robinson estimated the speed of the Pontiac, which was driven by Crabbe, at "approximately 40 miles per hour."

Possibly the difference in the speed at which the pedestrian, Mrs. Hardy, was traveling and the speed at which Crabbe's automobile was traveling, was overlooked or at least not taken into account. Robinson testified that Mrs. Hardy "was walking slow * * * when I saw her." Mrs. Hardy testified that in December of 1959, three years after the accident, she was sixty-seven years of age and hence was sixty-four when the accident occurred.

We were unable to find any more specific estimate of the speed at which Mrs. Hardy was walking. The so-called "quick time" with which all those familiar with military training are acquainted is "cadence at the rate of 120 steps per minute," with the step or pace defined as "a step of 30 inches; the length of the full step in quick time" (U. S. Infantry Drill Regulations, FM 22-5, pp., 3 and 4).

The so-called "quick time," stated another way, is five feet a second or slightly under three and one-half miles per hour. A simple calculation will disclose the number of feet a person will travel per second at one, two or three miles per hour:

| No. of seconds | At one m. p. h. | At two m. p. h. | At three m. p. h. |
|---|---|---|---|
| 1 | 1.46 ft. | 2.93 ft. | 4.39 ft. |
| 2 | 2.93 " | 5.86 " | 8.79 " |
| 3 | 4.39 " | 8.79 " | 13.19 " |
| 4 | 5.86 " | 11.73 " | 17.59 " |
| 5 | 7.33 " | 14.66 " | 21.99 " |

On the other hand, the testimony concerning the speed at which Crabbe's automobile was traveling as it proceeded south toward the intersection has been variously estimated at between 25 and 40 miles an hour. Using the same plan as above for cal-

culation discloses that the distance the car traveled per second at the various speeds is as follows:

| No. of seconds | At 25 m. p. h. | At 30 m. p. h. | At 35 m. p. h. | At 40 m. p. h. |
|---|---|---|---|---|
| 1 | 36.66 | 43.99 | 51.33 | 58.66 |
| 2 | 73.33 | 87.99 | 102.66 | 117.32 |
| 3 | 109.99 | 131.99 | 153.99 | 175.99 |
| 4 | 146.66 | 175.99 | 205.32 | 234.65 |
| 5 | 183.32 | 219.99 | 256.65 | 293.32 |

Thus, if we assume that Crabbe was traveling at forty miles per hour and Mrs. Hardy at two miles per hour, in a period of one second, Crabbe's car traveled fifty-eight feet, while Mrs. Hardy moved less than three feet, or if it be assumed that two seconds were involved, Crabbe's car traveled one hundred seventeen feet, while Mrs. Hardy traveled less than six feet.

It seems difficult to understand why Crabbe did not see Mrs. Hardy until he was either five or ten feet away from her, but it seems clear that he considered that she was in his path or he would not have swerved his vehicle to the right and attempted to put on the brakes. If Crabbe was traveling even at thirty miles per hour, he would traverse ten feet in less than one-quarter of a second. We conclude, therefore, that under the circumstances present here, there was evidence that Mrs. Hardy was in the path of the defendant; that he was driving "at a greater speed than will permit him to bring it [motor vehicle] to a stop within the assured clear distance ahead" (Section 4511.21, Revised Code); that the court should have charged the jury with reference thereto; and that assignment of error No. 3 is well taken and should be sustained.

We have examined the fourth assignment of error which deals with various alleged errors in the charge of the court with reference to contributory negligence, the burden of proof with respect thereto, the quantum of evidence required and the amount of evidence to counterbalance an inference of plaintiff's negligence, but we do not find that the charges involved contain error prejudicial to the plaintiff and we are, therefore, of the opinion that the fourth assignment of error should be overruled. With reference to the failure to charge concerning the

use of special verdict forms Nos. 3 and 4, we do not believe the jury was misled for the reason that the question in No. 4 is predicated upon an affirmative answer to question No. 3, and otherwise is expressly inapplicable.

The fifth and final assignment of error is as follows:

"The court erred in overruling plaintiff's motion for a new trial."

There were eight grounds specified in plaintiff's motion for a new trial, and, as counsel for Mrs. Hardy points out, many of them are included in errors already assigned. It was the claim of plaintiff that Crabbe was driving his motor vehicle while under the influence of alcohol, and was intoxicated. In the amended petition, filed May 1, 1958, there appeared the following:

"Plaintiff says further that shortly prior to the time of the collision defendant had consumed several glasses of intoxicating liquor, and, at the time of the collision, was operating his automobile while under the influence of intoxicating liquor.

"Plaintiff says defendant was negligent in the following respects which negligent acts were the proximate cause of plaintiff's injuries:

"* * *

"6. In operating a motor vehicle while under the influence of intoxicating liquor."

On May 10, 1958, counsel for defendant moved to strike all the above language relating to consuming intoxicating liquor, operating a motor vehicle while under the influence of intoxicating liquor and the specification of negligence with reference thereto. In the court below, all three branches of the motion were sustained and a second amended petition was filed, omitting any reference whatever to driving while intoxicated.

When the matter came on for trial, counsel for plaintiff, upon objection of the defendant, was not permitted in his opening statement to make any reference whatever to the alleged drunken condition of Crabbe at the time of the collision. Although the allegations as to intoxication were stricken upon the motion of defendant's counsel, one of the grounds then advanced by defendant was that plaintiff had not pleaded intoxication.

As disclosed by the record, the following discussion was had out of the presence of the jury:

"Mr. Lohr: It is the intention of the plaintiff, in opening statement, to make mention of the fact that the defendant at the time of the accident was intoxicated or under the influence of alcohol, and as I understand the defense will object?

"Mr. Alton: We will. In fact, we will object whenever it is raised during the trial, first, it was not pleaded, and second, because it would be essentially prejudicial unless in some manner it would be related to the causes of the accident under ruling of the recent case 169 O. S. 145.

"The Court: The court has checked the various cases concerning this matter, including 77 N. E. (2d), 105. The court has further checked into 51 Ohio Appeals and 101 Ohio Appeals 501 and 169 O. S. 145. The court feels that the plaintiff should not be permitted in his opening statement to talk about the defendant being under the influence or intoxicated while operating his automobile because intoxication of driver does not of itself constitute negligence upon which a criminal liability may be premised, and is only a remote circumstance reflecting upon the issues of negligence, and in that the court would cite 51 Ohio Appeals 53, so the court would rule that the plaintiff should not comment upon the intoxication."

Section 2315.01 of the Revised Code, dealing with trial and procedure, reads in part as follows:

"When the jury is sworn * * * the trial shall proceed in the following order * * *:

"(A) The plaintiff concisely must state his claim, and briefly may state his evidence to sustain it."

We have examined the various authorities referred to by counsel for Crabbe and the court. In *Parton* v. *Weilnau, Admx.*, 169 Ohio St., 145, decided by the Supreme Court of Ohio on April 29, 1959, the evidence that the decedent, Weilnau, was under the influence of alcohol was nearly negligible, and the court held that reasonable minds could not conclude "upon the evidence" that Weilnau was under the influence, in which case it was the duty of the trial court to withdraw the question of intoxication from the jury. In that case, *the petition contained the allegation that Weilnau* "was driving * * * while under the influence of alcohol." (See page 147.) So far as we can ascertain, the *Weilnau case, supra*, stands for the proposition that where there is a failure of proof, the issue should be withdrawn

from the jury. We are unable to find where it holds that, where violation of a pertinent traffic statute against driving while intoxicated is claimed to be the direct and proximate cause of the collision and injuries claimed, no reference may be made to it in the petition nor may any reference to such intoxication be made in the opening statement.

In the case of *Cleveland Ry. Co.* v. *Owens,* 51 Ohio App., 53, decided in 1935 by the Court of Appeals of the Eighth Appellate District, there was no issue involved as to any intoxication of either the plaintiff or the defendant. It appears that plaintiff was injured in a collision between a vehicle operated by the Cleveland Railway Company and a passenger automobile in which Owens was riding. On appeal, the railway company stressed the claimed intoxication, not of Owens, but of the driver of a vehicle in which Owens was a passenger. The issues, therefore, are not the same as those now before this court, and the case is therefore no authority, either for excluding reference to this violation in the petition or in the opening statement.

In *Morse* v. *Wise* (Common Pleas), 77 N. E. (2d), 105, the claim was made that intoxication may not be shown without an allegation to that effect in the petition and the court rejected this claim and held that such intoxication may be shown even without an allegation in the petition. The case, of course, does not stand for the principle that intoxication may not be alleged or stated at the time of the opening statement.

The other authority mentioned is *Zalewski* v. *Yancey,* 101 Ohio App., 501, decided in 1956 by the Court of Appeals for Lucas County. In that case, *the petition contained the allegation* that defendant consumed a number of drinks, "so that when defendant started to drive the plaintiff home about 12:40 a. m., he was under the influence of intoxicating liquor to the extent that he could not operate an automobile safely * * *." That case involved the guest statute, and the principal question was whether the allegations in the petition were sufficient to amount to wanton misconduct. The court held, in passing upon a demurrer, that they did, but the case offers no support whatever to the proposition that a petition may not contain an allegation of intoxication, or that it may not be referred to in the opening statement. Fess, J., in the opinion in the *Zalewski case, supra,* at page 505, wrote as follows:

"It is also observed that one who gets drunk, knowing that he is responsible for the driving of a motor vehicle and knowing that such vehicle in the hands of a drunken driver becomes a dangerous instrumentality to the public as well as his guest, could be found to be guilty of such willful as well as wanton misconduct as would proximately cause injury to his guest."

In the case of *Focht* v. *Justis*, 81 Ohio App., 297, it is stated in the opinion, at page 305:

"The fact that the defendant [motorist] did not see the plaintiff [pedestrian], who was most obviously present on the crosswalk, is no excuse for running her down, but rather increases the inference of negligence against him."

Two witnesses in this case testified as to the intoxicated condition of Crabbe on the night in question. Patrolman Robert Coontz, who has served as such for nine years, stated that Crabbe had "a very strong odor of alcoholic beverages on his breath"; that Crabbe's "clothing was disarrayed"; that Crabbe's "eyes were bloodshot"; that Crabbe "was swaying"; that "as he would walk, he was staggering"; that Crabbe "just slurred his speech—speech was slurred"; and that in the opinion of the patrolman "Mr. Crabbe was under the influence of alcoholic beverages and intoxicated."

Joel Robinson, called on behalf of the plaintiff, gave support to the conclusion reached by the patrolman, stating that there was the odor of alcohol on Crabbe's breath; that Crabbe's "eyes were bloodshot"; that Crabbe "wasn't walking surely, like you or I would"; and that Crabbe "wavered a little bit, not too much, but a little bit."

Possibly in further support of this was the testimony by John Taylor, a defense witness, that Crabbe's car did not stop at the time of the collision, nor did it come to rest until almost a block south of where the collision occurred. To the same effect, see the testimony of Joel Robinson, reading as follows:

"Q. How far from the intersection of Duxberry and Cleveland did he stop his car? A. Well, a block. In fact, a good block."

We conclude, therefore, referring to the fifth assignment of error, namely, the overruling of plaintiff's motion for a new trial, which included other errors of law apparent in the record and that the final judgment is not sustained by sufficient evidence

231

and is contrary to law, that the rulings of the court on the second and third branches of the motion to strike from the petition any reference to driving while intoxicated and the ruling of the trial court forbidding any mention of driving while intoxicated in the opening statement were prejudicial errors, and for this reason the fifth assignment of error is well taken and must be sustained.

For the reasons above set forth the judgment of the court below will be reversed, a new trial will be ordered, and the cause will be remanded to the court below for further proceedings in accordance with law.

*Judgment reversed.*

DUFFEY, P. J., and DUFFY, J., concur.